IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.                         **Case No. 09-40064-01-RDR**

MIGUEL BUGARIN,

        Defendant.

---

### MEMORANDUM AND ORDER

This is a drug case which arises from a traffic stop and a search of a Dodge Durango. Defendant was the sole occupant of the vehicle. The stop was made by Shawnee County Sheriff's Deputy Tracey Trammel at approximately 1:15 p.m. on June 3, 2009. Trammel is a trained drug interdiction officer with many years of experience. Trammel observed defendant change lanes on I-70 without signaling and drive erratically. Twice defendant abruptly swerved into or away from an exit lane. Defendant exited I-70, turned left proceeding along the overpass, turned left again and reentered I-70 going the opposite direction. Defendant then acknowledged Officer Trammel's flashing lights and brief siren by stopping his vehicle.

Defendant had a California driver's license, but said he was driving from Dallas to Kansas City to visit his sister.

He told Trammel that he did not know where his sister lived in Kansas City, but was planning on calling her. He told Trammel as well that he did not know his sister's phone number but was going to call his brother in Dallas and ask him to contact his sister. Defendant said he was not working at the present time and had moved to Texas from California because he was out of work. Despite being out of work, he had recently acquired the Dodge Durango.

Trammel noticed that the key ring attached to the ignition had only one key and that there was only one small duffle bag in the back seat.

Trammel observed that a vein in defendant's neck was pulsating; he thought defendant seemed very nervous. He also felt that defendant avoided eye contact. Defendant hesitated sometimes before answering Trammel's questions.

Trammel obtained insurance and Texas inspection documents from defendant. Defendant had purchased a one-month insurance policy on the vehicle only a few days earlier.

Trammel saw a small container of plastic grommets in the front of defendant's vehicle. In his experience as an interdiction officer, Trammel knew that grommets were used sometimes to hold moldings and shrouds in place for hidden

2

compartments in vehicles.

Trammel checked defendant's driver's license and performed an EPIC system check. Trammel learned that defendant had a prior controlled substance conviction, was on parole and that he was considered a controlled substance risk.

Trammel suspected that defendant had a hidden compartment in his vehicle which contained controlled substances. He called another officer (Shawnee County Sheriff's Deputy Brian Rhodd) to assist him with the traffic stop. Rhodd spoke with defendant and shared Trammel's suspicion.

Trammel wrote a warning ticket to defendant for failure to signal a change of lanes. He issued the ticket to defendant and returned defendant's documentation. He shook defendant's hand, said thanks, turned and walked three steps toward his patrol car. Then, he reversed course, approached defendant's window, and asked if he could ask defendant some questions. Defendant consented. Trammel asked defendant if defendant had contraband or various illegal drugs in the vehicle. Defendant said no. Trammel asked defendant twice if he could search the vehicle. Both times, defendant answered affirmatively. Trammel did not indicate how extensive the search would be.

3

Trammel had a written consent form but did not use it. The form is in English and Spanish. Trammel testified that he uses the form when he feels there is a problem with communication. Trammel and Rhodd testified that they had no problem communicating with defendant. Defendant appeared well able to understand English and to speak English.

The officers asked defendant to exit the vehicle while the search was conducted. Rhodd patted down defendant and then directed him to stand in the ditch. Rhodd watched defendant for a time while Trammel searched the vehicle.

Trammel opened the rear of the Durango. He noticed several indications of a false floor. He thought the third row of seats was too high and would not fold down to the originally designed position. Also, the bolts anchoring the seats were heavily scarred and tooled. The seat belt anchors were too close to the floor. The carpet appeared to have been stretched over a larger area. He opened a factory-designed compartment and removed a grommet. Through the hole, he saw sheet metal below that he did not believe should be there. Trammel pulled up the carpet and scraped the surface. He found Bondo, which is a putty-like product Trammel had seen used previously with false compartments. Rhodd shared in

4

these observations.

At this point, Trammel and Rhodd were confident that there was a false compartment in the vehicle. They decided to handcuff defendant and place him in a patrol vehicle. Then, they took out a row of seats in the Durango and pulled the carpet back. They could not find an entry into the false compartment. So, Trammel decided to punch a small hole into the floor. This took some tools, time and pounding. After he punched a hole in the floor, he detected a strong odor of coffee, a common masking smell in his experience. He also looked inside the hole and saw cellophane packages. Using a probe, he extracted what appeared to be methamphetamine.

After this was done, the officers took defendant's car to the "county shop" to continue their search. They eventually found the access point for the false compartment inside the fender above the driver's side rear wheel. When they opened the false compartment from this entrance, they removed several bundles containing approximately 24 pounds of methamphetamine. They also found coffee grounds.

Just before leaving the scene of the traffic stop, Rhodd recited the Miranda warning to defendant in English. He asked defendant if he understood. Defendant replied that he did not

speak English much and that he did not understand all of his rights.

Legal arguments

Defendant makes the following arguments:  1) he did not voluntarily consent to the search because he speaks Spanish and did not understand the officers' English; 2) the officers exceeded the scope of any consent to search by cutting the carpet, pulling it back, removing seats, puncturing a hole in the floor, and using a crow bar and other tools to gain access to the hidden compartment; and 3) the officers arrested defendant without probable cause when they handcuffed him and put him in the patrol car and, therefore, any search incident to defendant's arrest was unlawful.

Voluntariness of consent

Voluntariness of consent is judged by determining whether the government has presented "'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.'"  U.S. v. Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir. 1995) (quoting U.S. v. Dewitt, 946 F.2d 1497, 1500 (10th Cir. 1991)); U.S. v. Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993).  After reviewing the video recordings of the traffic stop and considering the testimony

during the suppression hearing, the court finds that the government has met the burden of proof. There was some need by the officers to repeat questions, which may have been caused as much by the traffic noise as by any failure by defendant to understand English. Defendant also mentioned a time or two that he did not understand English that well. One of those times was when he was given a <u>Miranda</u> warning and obviously knew that he would be questioned about the suspected crime. However, we are firmly convinced that defendant understood the officers' questions. Generally, he responded promptly, directly and consistently to them. Defendant answered affirmatively twice without equivocation or hesitation when specifically asked if he consented to a search of the vehicle. Any problem defendant had understanding English was not so significant that it prevented defendant from knowingly and voluntarily consenting to the search of his vehicle. Cf., <u>Sanchez-Valderuten</u>, 11 F.3d at 990-91 (involving defendant who had difficulty speaking English); <u>U.S. v. Ramos-Rivera</u>, 64 Fed.Appx. 153 (10th Cir. 2003) (involving defendant who was given the <u>Miranda</u> warning in Spanish).

<u>Scope of consent</u>

7

Defendant contends that the consent to search that he gave did not extend to permitting the officers to cut the carpet in his vehicle, scratch the paint, remove the third row of seats, puncture a hole in the rear floorboard and use a crow bar to beat on the floor in an effort to gain access to the hidden compartment.

The context of Trammel's request to search indicated clearly that he wanted permission to search the vehicle for illegal drugs. Defendant assented. Where an officer has indicated his intent to search for drugs or contraband, a suspect's consent "certainly implies that the officer [can] look wherever drugs might be hidden." U.S. v. Ramstad, 308 F.3d 1139, 1146-47 (10th Cir. 2002). "A reasonable person would expect more than a cursory view of the vehicle if the trooper were looking for contraband." United States v. Gregoire, 425 F.3d 872, 880 (10th Cir. 2005). Lifting a crinkled car trunk carpet, for instance, is within the scope of consent in these circumstances. U.S. v. McRae, 81 F.3d 1528, 1537-38 (10th Cir. 1996).

In this case, after receiving consent to search, the officers looked underneath defendant's vehicle and inside the rear portion of the vehicle, around and behind the last row of

seats.  They did not remove any seats, pound on the floorboard, cut the carpet, or punch a hole in the floorboard until after they had probable cause to believe there was a hidden compartment in the vehicle.

Probable cause to search is presented by facts and circumstances which warrant an officer of reasonable caution to believe that contraband or evidence of a crime will be found.  U.S. v. Stephenson, 452 F.3d 1173, 1177 (10th Cir. 2006).  Evidence of a hidden compartment in a vehicle, when combined with other suspicious circumstances, will provide probable cause to search.  Id.  Indeed, evidence of a hidden compartment alone can provide probable cause to search.  Id.; U.S. v. Jurado-Vallejo, 380 F.3d 1235, 1238 (10th Cir. 2004) (if a vehicle has a hidden compartment, it is highly likely to contain contraband).  Finding a hidden compartment can also provide probable cause to arrest.  U.S. v. Soto, 988 F.2d 1548, 1558 (10th Cir. 1993); U.S. v. Arango, 912 F.2d 441, 447 (10th Cir. 1990) cert. denied, 499 U.S. 924 (1991)(indications of a false bed in a pickup truck provided probable cause to arrest).  It further permits officers to remove the vehicle from the highway where the vehicle may be dismantled if necessary to obtain access to the hidden compartment.  U.S. v.

9

Alcaraz-Arellano, 441 F.3d 1252, 1261 (10th Cir. 2006); U.S. v. Anderson, 114 F.3d 1059, 1065-66 (10th Cir. 1997).

In this case, after defendant gave permission to search the vehicle, the officers mainly looked in the back of the vehicle. They noticed that the seats appeared to be higher than they should be; that the carpet appeared stretched wider; that the seat belt anchors were too close to the floor; that the bolts anchoring the seats were heavily scarred; and that defendant was carrying grommets in the car which could be used to help conceal a hidden compartment. The officers saw undercoating sprayed on the undercarriage that appeared suspicious. They also observed sheet metal underneath a factory-designed compartment, which was considered suspicious, as well as Bondo underneath the carpet. These facts were considered in the context of defendant's criminal record, defendant's nervousness, the presence of only the ignition key on the key ring, the absence of significant luggage, and defendant's unusual plan of visiting a sister whose phone number and address he did not know. Defendant made no objection to the search up to this point. Indeed, defendant never made an objection to the scope of the search, which may be considered an indication that the search was within the

scope of consent.  McRae, 81 F.3d at 1538.

Processing all of this information in light of the officers' training and experience, the officers reasonably believed that there was a hidden compartment in the vehicle. Therefore, the officers had probable cause to continue the search of the vehicle and to arrest defendant.  See U.S. v. Ledesma, 447 F.3d 1307, 1316 (10th Cir. 2006) (presence of scarred and marked up screws as well as misaligned carpet and panels in back of a van indicated the presence of a hidden compartment when considered together with defendants' nervousness, suspicious travel plans, absence of luggage and newness of vehicle);  U.S. v. Mercado, 307 F.3d 1226, 1230 (10th Cir. 2002) (evidence of an altered ceiling provides probable cause to search vehicle for a hidden compartment); Arango, 912 F.2d at 447 (indications of a false bed in a pickup truck provide probable cause of a hidden compartment); U.S. v. Olivares-Campos, 2006 WL 2224789 (D.Kan. July 31, 2006) (indications of a false bed in a pickup truck provide probable cause).  It was only after defendant was arrested and the above-mentioned facts were gathered that the officers removed seats from the vehicle, pounded on the floorboard and punctured a hole in the floorboard.

Probable cause to arrest

Defendant's final argument is that the officers did not have probable cause to arrest defendant until they had actually found the narcotics and, therefore, the doctrine permitting searches incident to an arrest could not authorize the search in this case. We reject this argument. As explained previously, the officers had probable cause to arrest defendant when they established a strong likelihood that there was a hidden compartment in the vehicle. They did not need to find narcotics before they had probable cause to arrest defendant and search the vehicle, including the interior of the hidden compartment. Stephenson, 452 F.3d at 1178.

Conclusion

For the above-stated reasons, defendant's motion to suppress shall be denied.

**IT IS SO ORDERED.**

Dated this 23rd day of November, 2009 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge